May it please the Court, I am Joan L. Thomas and I'm pleased to appear today on behalf of the appellant James Harrison. I'm hoping to use seven minutes for my primary argument and three minutes for rebuttal. There's a very strong probability that a jury found that Mr. Harrison should not have received the death penalty. Found that the state had not met its burden approving whatever it was that was necessary to impose the death penalty. We'll never know that fact for a legal certainty because the trial court refused to poll the jury despite a request to do so by Mr. Harrison's trial counsel. Without that simple opportunity to formally present the jury's verdict, there was no cause for mistrial. And the double jeopardy clause of the Constitution precludes the state from a second attempt at the death penalty. There are two basic prongs of the double jeopardy clause. The first, which is at issue here, is the right of a defendant to a decision by a jury in a single proceeding. The second involves the finality of a judgment following an acquittal or a conviction. It is not our position here that there has been an implied acquittal or that affidavits submitted after the verdict are of relevance. Rather, our argument here is there was no manifest necessity for a mistrial without conducting further inquiry of the jury as to whether they had reached a final decision on the death penalty. If you're correct, why shouldn't we remand this to the district court and say, make the inquiry you should have made at the time, bring the jurors in and see if all 12 of them agreed to acquit them on the death penalty? There's a substantial body of case law that says once the jury has been discharged, is no longer under the court's inquiries, I'm sorry, admonitions that in a sentence there's a chance for taint. And that's why it's important that this be done in court while the jury is still in session. You've come forward with affidavits of the jurors, right? The trial attorneys did do that. Okay, well, now let's bring them in. That's all after the verdict, right? The affidavits were obtained after the trial. They were. Okay, why shouldn't then the judge come back and say you've got affidavits that say they've reached a verdict? Let's see if they did. If you've got 12 people who say we agreed no death penalty, you win. That is, in effect, what the trial attorneys here tried to do. There's case law holding that affidavits that after the fact inquiries are of no assistance to the court. That's why the polling should have been done at the time. You say that you're not relying on those affidavits. That's correct. We're not relying on those affidavits. How did they get into the record then? The trial attorneys, after they had requested. The trial attorneys being your side? Yes. Okay, so the petitioner furnished these affidavits. That's correct. Okay, well, then were you disavowing them now or what? Yes. Essentially, it was a very compelling case for a finding that the jury had excluded death. There were two jury notes stating they were split nine to three between life without and life with. Under those circumstances, we had a very compelling reason to believe the jury had, in fact, excluded death. We requested that the jury be polled. In agreement with the state, the district court released the jury without polling the jurors. When you say polling, you mean asking each one individually or making inquiry of the foreperson? I think it would either need to be asking each person individually or it would be sending the jury back in for additional deliberations with a new special verdict form that said, are you unanimously opposed to death? I think the trial court would have been able to fashion that remedy however the trial court felt it was best to do so. But the fact remains that both as a general matter, under Nevada's unique death penalty scheme, which doesn't just allow for two options, the jury doesn't just say death or no death. The jury is allowed to also say life without, life with, or a term of years of 10 to 25 in addition to the death penalty. But because of the uniqueness of Nevada's death penalty system, polling should be allowed in the case where a special verdict form is not provided, indicating that the jurors are unanimous against death. In an alternative, under the very unique facts of this case, where you have two jury notes which strongly, strongly indicate that the jury has, in fact, rejected the death penalty, inquiry must be made. Well, the judge did address the foreperson and address the jury in open court, right? That's correct. Essentially to ask would further deliberations assist you. Well, the exact question was do you feel that the jury is at an impossible impasse in terms of punishment and the foreperson said I think it's at an impasse. That's correct. And then got the forms and saw that the forms that deal with the penalty has not been signed. The other forms were signed but not that one. Correct. What case do you have that says as a matter of constitutional law that isn't adequate enough? I think Arizona v. Washington is the primary case along with Bullington v. Missouri. Both of those are U.S. Supreme Court cases. Bullington v. Missouri found that when a jury has rejected the death sentence that jeopardy is attached, jeopardy applies and death may not. But the question is what case do you have that says the judge should poll the jury if requested? There is not a United States Supreme Court case directly. No. It doesn't have to be United States Supreme Court. Sure. What case says it is a matter of constitutional law the judge should poll the jury? There's State v. Pugliese out of the New Hampshire court, Stone v. Superior Court out of the California Supreme Court, Whiteacre v. Alaska. We've cited in the brief a number of cases in the context, not in the death penalty context. Those cases all arise in the context where a jury is split between lesser included offenses. But by analogy, I believe those cases apply. We've acknowledged that there is a split among the courts, the lower courts, as to whether there is a polling right on the lesser included offenses. But I think the analysis set forth in those cases is very persuasive on the death penalty issue. Do you have any Federal cases? There's one Sixth Circuit decision. Is that the one where there were different counts? That's correct. There were different counts. Right, where they say we've reached a verdict on counts one through four but not on five or something like that. In the Federal court, the Sixth Circuit found that there was an obligation to accept the partial verdict. Any Federal cases more along our facts? I have not found any, in part, especially in the death penalty context, because Nevada's system is so unique, because there are very few states that have this, so many options for the jury. If I may, I'd like to reserve the rest of my time for rebuttal. I had one question. If it was error not to poll the jury, what was your idea of the remedy being? The remedy would be that there was no manifest necessity for a mistrial, and the state may not seek the death penalty in the new penalty hearing. They would be limited to the three other alternatives. Well, you say no manifest necessity for a new trial, but that doesn't get you far enough, does it? No manifest necessity for seeking the death penalty in the new trial. I think that the state would be able to go ahead with a penalty phase that is limited to the life without life. But there's no real showing of what the jury decided. I've got two jurors, and that's it. Two jurors who send out notes that stated we're split 9-3 between life without and life with it, and that's exactly it. We should have been able to conduct that additional inquiry to find out has the jury reserved it. I say acknowledge that, that that should have been done, but why don't follow if what's your remedy is? I believe the remedy is that because the jury was likely split between the lesser offenses, that the death penalty can no longer be an option in this case. Thank you. May it please the Court. I'm Steve Owens of the Clark County District Attorney's Office on behalf of Respondent Appellees. The general rule is that a retrial following a hung jury does not violate double jeopardy, and that is what I submit should be the resolution of this case, the jury. Well, that's not really the issue here. The issue is whether the judge abused his discretion in not polling the jury when requested. And I disagree that that is the issue that was preserved and come up through the courts. The defendant in this case did not take an extraordinary writ to the Nevada Supreme Court on that issue. I agree that there is discussion in the briefs below about polling and about the mistrial. They waited six months, and they went and got the affidavits. And the way the issue has been framed ñ Well, the affidavits aren't relevant here. They've ñ they're not relying on the affidavits. Well, this is the first time they've disavowed the affidavits. Their argument up to this point in every court below has been relying on those affidavits and saying that those affidavits constitute a verdict. They realize that that is not a valid argument that's going to win in front of this Court, so they have shifted and are now saying that there was no manifest necessity for the mistrial. There's no case authority that they've been able to cite that a 2241 action is appropriately taken. So you want to revive their prior argument as well as the current argument? I'm sorry? So do you want to revive their former argument as well as their current argument? I'm not trying to revive any argument. I'm trying to say ñ They've waived it here. I'm trying to say that they have framed the issue in such a way that this Court is now looking at it in a way that no court below has looked at it. And I understand the standard is de novo, but they have shifted the issue so that they are now challenging the decision for mistrial, which was not challenged below. They asked for polling. I grant that. But a mistrial was granted and they did nothing. Six months later, after they had obtained some affidavits, that is when they took a writ of mandamus to the Nevada Supreme Court and they said that the affidavits bar the state reseeking the death penalty on double jeopardy grounds. They never went back and attacked that mistrial decision. They could have done so immediately by filing a writ of mandamus to the Nevada Supreme Court. Did you ever argue in this Court that their claim is not exhausted in the Nevada Courts? Well, I don't know that under 2241 it has to be ñ You don't know or are you saying it does have to be? There was no respondent that made an appearance in federal district court. The petition there was summarily denied. There was no appearance made by any respondent. This is our first opportunity to really address it. Did you in your brief argue that it was not exhausted in the Nevada Supreme Court? My understanding under 2241 ñ Well, that's not a very hard question to answer. I said, did you in your brief argue that it was not exhausted in the Nevada Supreme Court? I did not argue that it was not exhausted. I did challenge jurisdiction, though. So I think the issue has shifted a little bit. But even looking at the issue as they have ñ That you're not to poll the jury? Not when it comes to a capital sentencing decision when the jury has four different options and the decision between them is unlike lesser offenses where they're given a verdict form that says on each one, guilty, not guilty. When it comes to a sentencing determination and there's four options before the jury, they're not asked to say guilty or not guilty of each sentencing option. They're asked to determine first whether the mitigating circumstances outweigh the aggravating circumstances if they find an aggravating circumstance. We know they found an aggravating circumstance. Yes. And 24 mitigating circumstances. Yes. We know that. The next decision they make is did the mitigating circumstances outweigh the aggravating circumstance? That's another question. And we don't know what decision they made on that because they could have gone to life with or without parole no matter what they found about whether the mitigating circumstance outweighed aggravating. But they could not have gone to death penalty if mitigating outweighed aggravating. True. So the decision they would have had to make after they found one aggravating circumstance, the decision they would have had to make is does mitigating outweigh aggravating? Now, we don't know whether they made that decision. That's a factual decision they would have had to make. And the counsel asked the judge to find out whether they had made that factual decision. Now, what harm would that have done? It's a very coercive thing to start making inquiries of a hung jury and to inquire into their mental processes. They were asking them. It's not a mental process. The question is, did you make a factual decision, determination? Well, whether or not there are mitigators is a factual determination. But how they conduct the weighing process. Not how they conduct it. Did they conduct it? Did they reach a decision? And was it a final decision on the weighing? That's what a decision is. Which is individual to each juror. Well, that's why you ask each juror. Let me ask Judge Reinhart's question a different way. Suppose the judge had given them a verdict form that said, first question is, are there aggravating circumstances, yes or no? And then drop down, are there mitigating circumstances, yes or no, and what are they? Next question, do the aggravating circumstances outweigh the mitigating circumstances, yes or no? And then the next question is, do you impose the death penalty or some other penalty, yes or no? And they check yes or no on whether the death penalty should be imposed. And then they go on, if they say no, to what the other options are. Would that have been proper? No reason they couldn't do that, is there? I don't believe that would be proper. I think it's unwise to be inquiring. Unwise is not the same as proper. Would it be proper? What few jurisdictions allow partial verdict polling. I haven't found any federal authority on point. A few state courts that have allowed it on between lesser offenses and greater offenses. I mean, there's nothing in Nevada law that says the questionnaire couldn't have been structured the way I've just described it, is there? Well, no, there's nothing in Nevada law that would prohibit the jury verdict forms from being phrased that way. It's my understanding they agreed to the verdict forms. Well, that's another problem. But the judge gets an indication from two jurors that they may have reached a verdict with respect to death. Why should the judge not have inquired whether that is the case or not? Well, the judge did inquire through return of the verdict forms as to whether or not they had found an aggravating circumstance. And if there is to be some sort of partial polling on this sentencing determination, I submit that the only question that could be asked has to do with the aggravators. They found an aggravator. The weighing process does not match the other case law that we have that talk about an acquittal. An acquittal is a failure of the state to meet its burden of proof. We certainly have a burden of proof to establish an aggravating circumstance beyond a reasonable doubt. I submit we have no burden of proof when it comes to this highly subjective weighing process for which the jury is given no standard. It is not subject to the reasonable doubt standard. The question is, as Judge Reinhardt has said several times, did they reach a decision? We're not inquiring as to their process or anything. We just want to know, did they reach a decision on that? They may have reached a temporary decision. They may not have. I don't know. And that's the problem with inquiring is that you reach a final decision. Just as you asked the jury on everything else, whether you reached a decision. And I don't submit, I don't believe that answering that question about the weighing helps us determine whether or not there was an acquittal of the death penalty, because it is not a failure of the state's burden of proof. Just because a life sentence has been imposed in other cases, the courts have said that does not absolutely mean that there is a double jeopardy bar. It's only when there is an acquittal. An acquittal is a failure of the state to meet its burden of proof. If they said that mitigating outweighed aggravating, then you could not impose the death penalty. I think we could. That's not a failure of the state's burden of proof, and that is not a final determination. Now, wait a minute. It's not final. Suppose they did it finally. They finally determined that mitigating circumstances outweighed aggravating. Can you then impose the death penalty? I think there can only be one final choice, and that is when they select the appropriate punishment. They are not asked to rule out certain sentences. That's not part of it. They're given two different forms, aren't they? One in which you can impose the death penalty and one in which you can't. Now, when do you get the form that you can't impose the death penalty? All the verdict forms are given to the jury at once. Yes. But when are they to use the form which doesn't include the death penalty? When they have made that weighing determination. Yes. When they've made the weighing determination. And selected. Judge Hugg just said to you, can't you ask whether they've made the weighing determination? And unless they have actually selected a sentence, I do not believe that you can ask whether or not they have. Because they could change their mind, right? Yes. As they could as to whether the mitigating outweighs aggravating. Yes. So that's not relevant either. I'm sorry? That's not, I mean, as to whether there was an aggravating circumstance. They could change their mind as to that, too. They could. And that's why I don't think there should be any. And they could change their mind as to whether he's guilty. No, because that's a final verdict returned in court that they all assent to before a judge in a court proceeding. When you receive it, it's final. But up until the time you receive it, it's not final. True. Nothing's final. They can't ask about, judge can't ask about anything. A judge can inquire whether or not they've reached the final verdict. When it comes to sentencing decisions, that's where it should end up. But when, is there any time you can ask a jury whether it's reached a final verdict when they haven't returned a form? A few jurisdictions, a few state jurisdictions have allowed that on lesser offenses. No jurisdiction has allowed that on sentencing determinations to my knowledge. And that's because I believe sentencing determinations are very much unlike lesser and greater offenses where it's either guilty or not guilty. Sentencing determination is which among several options is the most appropriate in this case. And could you reason that there's no such thing as a final jury determination until it's returned in court? Until a sentence is actually selected, I don't think there is any partial verdict that you can distill. And he can't, no, he can't ask them whether they've reached a final determination on anything. That's my presumption, yes. Okay, suppose we disagree with you about that. Suppose we say the judge had enough reason to believe that the jury had reached a verdict on death or no death and should have made that inquiry. Okay, I know that's not your position, but let's just, for the sake of discussion, say that's how we come out on this. What is the remedy then? Do we send it back for an evidentiary hearing to determine whether they've reached a verdict or is it at the end of the ballgame or what? I don't think you can send it back. I'm in agreement with Ms. Thomas on that. That was our position below as to why the affidavits could not be used. Once the jurors are released from their admonition, and now it's been some considerable months, I don't think you can go back and inquire and get any sort of reliable partial verdict out of them. So the district, we should not send it back to the district judge to say find out whether they reached a verdict on death or not. That's not one of the remedies you think we have available to us. I don't think that can be done at this point, no. Okay. So even if there were. Okay, thank you. I think we're three minutes over already. Okay. Thank you very much. Thank you. You wanted three minutes and you tried to stop. You now have about one. We'll give you two. Okay. Thank you. I'll do this very quickly. As to the exhaustion issue, at the record excerpts at page 102, the state's caption notices that the state is arguing the double jeopardy clause does not guarantee a right to a partial verdict. The states that force substantial authority on this issue submit that the issue has been fully presented to the Nevada Supreme Court and is exhausted. As to the state's arguments here regarding aggravators and finality of judgment, the state's position is contrary to both Nevada law and to the U.S. Supreme Court decision in Bullington. Bullington does not fall on aggravators or not. It falls on did the jury reach a decision regarding the death penalty for whatever reason, be it weighing, be it the final decision as a subjective matter, and also the state's position is contrary to Nevada law. I would give your attention to the case of Johnson v. State at 148 P. 3rd, 767, a 2006 case. It was a death penalty case where the court bifurcated the decision. A jury was presented with verdict forms that said, do you find that the mitigators outweigh the aggravators? The jury in that case said no, and it then left the eligibility phase into a selection phase. So certainly the Nevada Supreme Court has recognized that courts have the discretion to give such a verdict form. But most critically, the court has recognized that in Nevada, for death eligibility, that weighing equation must be done. It's only after that that the case enters into a selection phase, which is why here we ask that polling be done, both as to the weighing decision and as to the final decision. Had this jury said no to the death penalty, there's every indication that they did, and we ask that the state not be allowed a second attempt at death. Thank you, counsel. Counsel, both of you, we would be interested in your considering, and you don't have to answer this immediately. You may want to give some thought to it. We'd like to know whether you'd both be interested in the possibility of mediation. We have an excellent mediation service here. We mediated death penalty cases previously successfully, and we'd like you both to consider the possibility. You can discuss it in your offices and between yourselves whether you'd be willing to mediate this case. We'll give you a week to advise us of that. We won't issue anything further until you let us know. If you don't let us know, we'll proceed to a decision. If you do let us know, we'll withhold any further action until we see whether mediation is successful or not. So would you please both let us know within a week whether you're willing to mediate the case? In fact, if it turns out you're not, send us a joint letter. You don't have to identify which party was willing or unwilling. Just send us a joint letter that you've been unable to agree on submitting it to mediation or that you are willing to agree on submitting it to mediation. Thank you both very much. Thank you. The case is not submitted.
judges: Hug, Reinhardt, Silverman